IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NICHOLAS MCKEE (individually and on behalf of all other persons similarly situated),<br><br>Plaintiffs,<br><br>v.<br><br>PETSMART, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civ. No. 12-1117-SLR<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

At Wilmington this 9th day of December, 2013, having considered plaintiffs' motion for conditional certification, and the papers filed in connection therewith, the court issues its decision based on the following reasoning:

1. **Background.** Plaintiff Nicholas McKee, along with three other current or former Operations Managers ("OMs") (collectively, "plaintiffs") of defendant PetSmart, Inc. ("defendant" or "PetSmart"), has filed suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., on behalf of all OMs employed by defendant throughout the United States at any time from September 10, 2009 to the present, and who were classified as exempt employees. Plaintiffs allege that defendant has violated the FLSA by willfully misclassifying them, and other similarly situated OMs, as exempt and failing to pay them overtime pay for all hours worked over 40 hours in a workweek. Plaintiffs move for conditional certification and notice pursuant to § 216(b) of the FLSA,

so that additional current and former OMs can be notified of their right to participate in this lawsuit.

2. **Standard.** The FSLA was enacted to protect "those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945). Section 216(b) of the FLSA provides a "'collective action' mechanism" that allows "an employee alleging an FLSA violation [to] bring an action on 'behalf of himself' . . . and other employees similarly situated.'" *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011). In this regard, the United States Court of Appeals for the Third Circuit has embraced a two-tiered analysis when deciding whether a suit under § 216(b) may move forward as a collective action.

> During the initial phase, the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff. If the plaintiff carries her burden at this threshold stage, the court will "conditionally certify" the collective action for the purposes of notice and pretrial discovery. In the absence of statutory guidance or appellate precedent on the proper definition of "similarly situated," a divergence of authority has emerged on the level of proof required at this stage. Some trial courts within our circuit have allowed a plaintiff to satisfy her burden simply by making a "substantial allegation" in her pleadings that she and the prospective party plaintiffs suffered from a single decision, plan or policy, but the majority of our circuit's trial courts have required the plaintiff to make a "modest factual showing" that the proposed recipients of opt-in notices are similarly situated. . . .
>
> Under the "modest factual showing" standard, a plaintiff must produce some evidence, "beyond pure speculation," of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees.

*Id.* at 193. If a plaintiff meets her burden at the "conditional certification" phase, the parties would pursue discovery to aid the court in making its "conclusive determination as to whether each plaintiff who has opted in to the collection action is in fact similarly situated to the named plaintiff. . . . This second stage is less lenient, and the plaintiff bears a heavier burden. . . . Should the plaintiff satisfy her burden at this stage, the case may proceed to trial as a collective action." *Id.* (citations omitted).

3. In *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989), the Supreme Court recognized that

> the efficacy of § 216(b) hinges on "employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." . . . To ensure this task "is accomplished in an efficient and proper way," the Court interpreted § 216(b) as endowing district courts with "the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the Federal Rules of Civil Procedure."

*Symczyk*, 656 F.3d at 194 n.7 (citing *Hoffman*, 493 U.S. at 170). *See also Zavala v. WalMart Stores, Inc.*, 691 F.2d 527, 536 (3d Cir. 2012). The court must determine, then, whether plaintiffs at bar have proffered sufficient factual support to justify ordering and facilitating notice to a nationwide class of PetSmart OMs.

4. **Discussion.** Defendant PetSmart does not dispute that the OM job description and training regimen, as well as its corporate policies and procedures, are designed and intended to create uniformity among OMs in terms of their duties and responsibilities. (D.I. 55 at 4-6) According to plaintiffs, this expected uniformity (along with plaintiffs' testimony concerning their nonexempt duties)[1] is sufficient to pass

---

[1]*See, e.g.,* D.I. 51, exs. G, H, I; D.I. 57, ex. D.

3

muster under the lenient standard for conditional certification. That is, plaintiffs contend that the record contains some evidence of a factual nexus between the manner in which defendant's policies have affected plaintiffs and the manner in which the policies have affected other employees. Defendant disagrees, arguing that the combination of corporate uniformity and a plaintiff's allegations of FSLA violations should not on their own be a sufficient nexus.

5. A similar quantum of evidence identified by plaintiffs has led to different results in different courts. For example, the court in Goodman v. Burlington Coat Factory, Civ. No. 11-4395, 2012 WL 5944000 (D.N.J. Nov. 20, 2012), concluded that,

> [a]t this stage, the Court's role is not to evaluate the merits of Plaintiffs' claim that Burlington misclassifies ASMs as "exempt"; rather, the Court's role is to determine whether Mr. Goodman has made a modest factual showing of the manner in which this allegedly unlawful policy affected him and the way it affected other Burlington ASMs. Here, the Court notes that all Burlington ASMs nationwide are subject to the same uniform job descriptions, training procedures, work regulations, and compensation policies, including a uniform classification of all ASMs nationwide as "exempt" under the FLSA. Mr. Goodman's testimony and the testimony of the ASM opt-ins indicate that they performed the work of non-exempt hourly employees and worked over forty hours in a workweek without receiving overtime compensation. Here, without weighing the merits of Plaintiffs' FLSA claims, the Court finds that Mr. Goodman has made a "modest factual showing" that to the extent that Burlington's allegedly unlawful misclassification affected Mr. Goodman, it affected other potential ASM collective action members.

Id. at *5.

6. In contrast, the court in Bramble v. Wal-Mart Stores, Inc., Civ. No. 09-4932, 2011 WL 1389510 (E.D. Pa. April 12, 2011), faced with a similar record (uniform corporate policies and the testimony of the plaintiffs), found that plaintiffs had failed to

demonstrate that their experiences could be "more broadly applied" as opposed to being "merely anecdotal evidence specific to them." Id. at *6. The court concluded:

> Although plaintiffs and the putative opt-ins share the same job title and essentially the same job description, an analysis of plaintiffs' claim that APCs are misclassified as exempt would require an individualized inquiry as to whether the tasks in fact performed by each putative collective action member are or were similar to the tasks that plaintiffs claim they performed and which render them more appropriately classified as non-exempt employees.

Id. at *8.

7. The question then, is whether plaintiffs at bar have demonstrated a factual nexus between their alleged experiences at select PetSmart stores and the experiences of current and former OMs throughout the country? In this regard, plaintiff McKee concedes that he does not know anything about the experiences of other OMs at different PetSmart stores and that he simply assumed that other OMs had the same experiences he did. (D.I. 51, ex. G at 72, 179) Tabitha Hardiman characterized the store where she worked as "smaller" with "a minimal staff" who were very "task oriented." (Id., ex. I at 177) Although Kathleen Shively talked to other OMs about "how much stocking we did," she did not know how much time these OMs actually spent stocking. (Id., ex. H at 270-71)

8. A review of the record indicates that OMs generally "make sure the store[s] ran smoothly with the team." (Id., ex. H at 399) In other words, OMs perform whatever tasks need to be performed to accomplish the above, including (*inter alia*) non-exempt duties like stocking shelves, assisting customers, unloading delivery trucks, running the cash register, and caring for pets. The court finds the very nature of the OM's job (and

the manner in which OMs perform any work or task required to ensure that a store runs smoothly) satisfies the modest factual showing required for the proposed recipients to be similarly situated.

9. **Conclusion.** In sum, the court concludes that an analysis of plaintiffs' claim that OMs are misclassified as exempt has been demonstrated by the record presented. Accordingly, the court will conditionally certify the proposed class. An order shall issue.

_____
United States District Judge