IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NICHOLAS MCKEE, Individually And On Behalf Of All Other Persons Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> PETSMART, INC., <br><br> Defendant. | Civil Action No. 12-1117-SLR-SRF |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the court in this action brought under the Fair Labor Standards Act ("FLSA") is a motion to compel filed by plaintiff Nicholas McKee ("McKee") and all other similarly situated current and former employees ("plaintiffs") that hinges on whether defendant PetSmart, Inc. ("PetSmart" or "defendant") waived the attorney-client privilege by asserting a "good faith" affirmative defense pursuant to 29 U.S.C. § 260. (D.I. 183) For the following reasons, plaintiffs' motion is granted-in-part and denied-in-part.

### II. BACKGROUND

On September 10, 2012, McKee initiated this action on behalf of himself and other current and former operations managers of PetSmart. Plaintiffs allege that PetSmart misclassified its operations managers as exempt under federal overtime laws in violation of the FLSA, and has failed to pay them overtime compensation. (D.I. 1 at ¶¶ 1-2)

On September 17, 2014, plaintiffs deposed Shane Burris, PetSmart's director of compensation, regarding the affirmative good faith defense raised by PetSmart. (D.I. 183, Ex. D

1

at 7:1-5) Burris testified that he is responsible for deciding whether a specific store level position, such as an operations manager, is classified as exempt. (*Id.* at 124:5-126:24) During the course of the deposition, PetSmart's counsel repeatedly invoked the attorney-client privilege and instructed Burris not to answer questions as to whether he relied on legal advice in making classification decisions regarding the exempt status of operations managers. (*Id.* at 75:3-83:23) Burris testified that he made exemption decisions based on store visits and conversations with various people, including the legal department. (*Id.* at 140:4-141:4)

On September 23, 2014, plaintiffs filed the instant motion to compel, alleging that PetSmart invoked the attorney-client privilege "to stifle testimony that was both non-privileged and directly responsive to Defendant's 'good faith' affirmative defense." (D.I. 183 at 1) By way of the motion to compel, plaintiffs request that the court issue an order (1) directing Burris to answer specific questions and any follow-up questions; (2) granting plaintiffs an opportunity to re-depose Burris; and (3) requiring PetSmart to produce documents it has withheld based on its allegations of privilege. (*Id.*) On October 2, 2014, the court held an oral argument to address the motion.

### III. LEGAL STANDARD

The attorney-client privilege protects disclosure of communications between a client and his or her attorney related to securing legal advice. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 852 (3d Cir. 1994). The privilege applies to communications from an attorney to a client as well as from a client to the attorney. *See Upjohn v. United States*, 449 U.S. 383, 390 (1981). The burden of demonstrating the applicability of the attorney-client privilege rests on the party asserting the privilege. *See Matter of Bevill, Bresler & Schulman Asset Mgmt.*

2

*Corp.*, 805 F.2d 120 (3d Cir. 1986). Specifically, the party asserting the privilege must show the following:

> (1) [T]he asserted holder of the privilege is or sought to become a client;
> (2) The person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;
> (3) The communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and
> (4) The privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979) (internal quotation marks omitted).

The Third Circuit has held that "[a] party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action. While the attorney's advice may be relevant to the matters in issue, the privilege applies as the interests it is intended to protect are still served by confidentiality." *Rhone-Poulenc*, 32 F.3d at 864. "[F]inding that confidentiality may be waived depending on the relevance of the communication completely undermines the interest to be served." *Id.* The Third Circuit expressly noted that decisions "extend[ing] the finding of a waiver of the privilege to cases in which the client's state of mind may be in issue in the litigation . . . are of dubious validity." *Id.*

## IV. DISCUSSION

In support of the motion to compel, plaintiffs allege that defendant cannot simultaneously assert a good faith defense and claim that the attorney-client privilege protects all documents and testimony relating to defendant's state of mind in determining the exempt classification status of the operations manager position. (D.I. 183 at 2-4) Plaintiffs contend that they are effectively

3

barred from challenging defendant's good faith in this matter because they cannot inquire into how defendant's state of mind was formed without access to privileged testimony and documents. (*Id.* at 2-3) In response, defendant contends that it has not relied on advice sought from counsel in asserting its affirmative defense of good faith and, as a result, plaintiffs cannot force it to waive the attorney-client privilege. (D.I. 187 at 1)

The court concludes that defendant has not waived the attorney-client privilege by asserting a good faith affirmative defense because defendant has not relied on privileged communications or testimony in support of its defense. *See Rhone-Poulenc*, 32 F.3d at 863. Contrary to plaintiffs' contentions, "[a] party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action. While the attorney's advice may be relevant to the matters in issue, the privilege applies as the interests it is intended to protect are still served by confidentiality." *Id.* at 864. The deposition transcript in the present case reveals that defendant preserved the privilege:

> Ms. Rudich: You are instructing him not to answer if he relied on legal advice when determining whether the operations manager –
> Mr. Voss: Correct.
> Q By Ms. Rudich: You are here today to testify – is PetSmart asserting that any violation of the FLSA is not willful within the meaning of the FLSA?
> A: Yes.
> Q: What's the basis for that defense?
> A: That due diligence was done in order to determine the exemption status of the FLSA.
> Q: What due diligence was done?
> A: Again, if you are asking time bound around 2005, what would have in my mind been used would have been interviews and information with the leadership of operations, the field leadership, store managers, perhaps talks with other operations managers. That's an assumption on my part.
> Q: What did you do to educate yourself as to the basis for that – for PetSmart's – for PetSmart's assertion that the violation of FLSA was not willful?
> . . .
> A: Based on the information that I was able to obtain on my search, the information that I found indicated that there were – there was information gleaned from both personal observation based on my knowledge of Ralph Marong and

4

> interactions that we would have had as well as information that he obtained from store operations and the field leadership team in regard to the duties that an operations manager was performing.

(D.I. 183, Ex. D at 78:2-79:10)

Plaintiffs' unsuccessful attempts to draw a waiver from Burris, which were repeatedly resisted by defendant via its counsel's instructions, are not a basis for the court to abrogate the privilege. Plaintiffs' motion vents frustration at the inability to elicit an "advice of counsel" defense from defendant that would create a path to disclosure of privileged communications, which plaintiffs find vital to their case on the issue of willfulness. However, relevance is not the standard for waiver of the privilege "even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." *Rhone-Poulenc*, 32 F.3d at 864. In light of the foregoing facts and authority, the court cannot conclude that defendant waived the attorney-client privilege by asserting its good faith affirmative defense.

Plaintiffs' counsel persisted in their efforts to obtain an admission by Burris that various legal opinions provided by defendant's counsel factored into his analysis of operations manager exemption classifications under the FLSA, but Burris denied relying on or reviewing such opinions at numerous points throughout his testimony. (D.I. 183, Ex. D at 41:25-42:16) Plaintiffs' counsel's cross examination of Burris at the deposition was focused on eliciting an admission of reliance on certain compliance reviews generated by defense counsel, namely, a June 17, 2004 document and an April 14, 2010 document summarizing the FLSA compliance reviews of the operations manager position, as well as a December 15, 2011 PowerPoint presentation addressing the exempt status of the operations managers. (D.I. 183, Ex. E) Burris denied that he personally reviewed the 2004 and 2010 FLSA compliance reviews, but acknowledged that he was present for the PowerPoint presentation. (*Id.*, Ex. D at 60:9-61:9,

5

89:23-91:10) Therefore, to the extent that the PowerPoint presentation may constitute a combination of facts, which are discoverable, and legal conclusions regarding those facts, which are not discoverable, defendant should produce a redacted version of the PowerPoint presentation to plaintiffs. *See Rhone-Poulenc*, 32 F.3d at 864 ("Facts are discoverable, the legal conclusions regarding those facts are not.").

The case law cited by plaintiffs stands for the proposition that when a defendant relies on a defense placing its state of mind at issue, the plaintiff may review privileged communications if doing so is the only way to assess the truth of the factual claim. *See Chevron Corp. v. Donziger*, 2013 WL 6182744 (S.D.N.Y. Nov. 21, 2013); *Xuedan Wang v. Hearst Corp.*, 2012 WL 6621717 (S.D.N.Y. Dec. 19, 2012). However, the Burris deposition transcript reflects that privileged communications are not the only evidence of defendant's state of mind in the present case, as Burris testified that he visited stores and held discussions with store operations, human resources, legal, finance, and field operations to gain an understanding of the duties performed by operations managers. (D.I. 183, Ex. D at 43:10-44:15; 140:16-141:4) Moreover, the court cannot credit the unpublished decisions from the Southern District of New York cited by plaintiffs over binding precedent from the Third Circuit which states that "extend[ing] the finding of a waiver of the privilege to cases in which the client's state of mind may be in issue in the litigation . . . are of dubious validity." *Rhone-Poulenc*, 32 F.3d at 864.

Plaintiffs' remaining requests (1) to take a supplemental deposition of Burris, and (2) to require the production of the privileged documents identified on the privilege log, are denied. Plaintiffs argue in the alternative that defendant should be precluded from asserting a defense at trial that it acted in "good faith" based on advice of counsel. Evidentiary issues relating to defense preclusion are not ripe and should be raised with the trial judge at the appropriate time.

However, defendant bears the risk that such a defense and any documents withheld from discovery would not be admitted at trial.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion to compel (D.I. 183) is granted-in-part and denied-in-part. Specifically, defendant must produce a redacted version of the PowerPoint presentation referenced in Burris' deposition. Plaintiffs' motion to compel is denied in all other respects. An Order consistent with this Memorandum Opinion shall issue.

This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Opinion. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: October 15, 2014

Sherry R. Fallon
United States Magistrate Judge